UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EURAL DEWAYNE DEBBS, SR., <br><br> Plaintiff, <br><br> v. <br><br> HARBORVIEW MEDICAL CENTER, *et al*., <br><br> Defendants. | Case No. C12-479-JLR-JPD <br><br> REPORT AND RECOMMENDATION |

## INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Eural Debbs is currently confined at the King County Correctional Facility ("KCCF") in Seattle, Washington. He has filed a *pro se* civil rights action under 42 U.S.C. § 1983 to allege violations of his constitutional rights and state law related to medical care he has received during the course of his incarceration at KCCF. Sean Dumas, the only defendant remaining in this action, has filed a motion for summary judgment.[1] Plaintiff opposes defendant's motion. The Court, having reviewed defendant's motion, plaintiff's briefs in

---

[1] Harborview Medical Center was the only other defendant specifically identified in plaintiff's amended complaint. Defendant Harborview Medical Center was dismissed from this action by Order entered September 17, 2012. (*See* Dkt. No. 76.)

REPORT AND RECOMMENDATION - 1

1  opposition, and the balance of the record, concludes that defendant Dumas's motion for
2  summary judgment should be granted.

3  FACTS

4  Plaintiff alleges in his amended civil rights complaint that defendant Sean Dumas has
5  been deliberately indifferent to his serious medical needs since he was booked into KCCF on
6  January 26, 2012. (Dkt. No. 9 at 1.) Plaintiff asserts that he advised defendant Dumas at the
7  time of his booking that he "was a wheelchair patient with a cane and a scooter" due to serious
8  spinal problems. (*Id*. at 3.) He further asserts that though he provided verification of his medical
9  condition to defendant, defendant totally disregarded his condition, including his need for
10 assistive devices and pain medication. (*Id*.)

11 While plaintiff identifies defendant Dumas as a nurse at KCCF, defendant Dumas is, in
12 fact, the personal health services supervisor at the facility, a position he has held since 2007.[2]
13 (Dkt. No. 81 at 2.) In his role as personal health services supervisor, defendant Dumas is
14 responsible for supervising the nursing staff at the facility and for responding to medical
15 grievances from inmates. (*Id*.) Defendant, given his supervisory role at the facility, has
16 provided no direct care to plaintiff during the course of his current incarceration. (*Id*.)
17 Defendant's involvement with plaintiff has instead been limited to responding to grievances
18 submitted by plaintiff concerning his medical care. (*Id*. at 3.)

19 The evidence in the record demonstrates that at the time plaintiff was booked into KCCF
20 in January 2012 he received a medical receiving screening, a screening which all inmates
21 undergo at the time of booking. (*Id*.) The receiving screening form for plaintiff, which was

---

[2] Defendant Dumas previously worked as a registered nurse at the facility for 12 years. (*See* Dkt. No. 81 at 2.)

REPORT AND RECOMMENDATION - 2

completed by a registered nurse at the facility, not defendant Dumas, noted a history of chronic back and leg pain. (Dkt. No. 81, Ex. 1 at 2.)  This information was apparently obtained from a chart review of a previous incarceration and not from a self-report by plaintiff at the time of the assessment.  (*Id*.)  The receiving screening form made no mention of plaintiff having arrived with a wheelchair, cane or scooter nor does it make any mention of plaintiff having used such devices outside of jail.  (*See id*.)

The receiving screening form indicated that the primary medical concern at the time of plaintiff's booking was that he had symptoms of tuberculosis.  (*Id*.)  As a result, plaintiff was initially housed in the infirmary in respiratory isolation.  (Dkt. No. 81 at 2 and Ex. 2 at 1.)  An infirmary progress note dated February 1, 2012, indicated that plaintiff reported to the nursing staff that he had multiple disc problems for which he had "put off surgery for 20 yrs" and that he had been given a scooter outside of jail.  (*Id*., Ex. 2 at 1.)  The same infirmary progress note indicated that plaintiff would become angry when asking staff for his wheelchair and cane, and also that staff advised plaintiff he had been witnessed ambulating easily and standing for lengthy periods of time and that a chart review of outside records had been conducted which revealed no need for assistive devices.  (*Id*.)

On January 27, 2012, the day after plaintiff was booked into the facility, he submitted his first grievance expressing his need for a wheelchair.  (Dkt. No. 9 at 12.)  Defendant Dumas reviewed the available chart notes, including the receiving screening and the infirmary progress notes referenced above, and concluded that a wheelchair was not indicated because the records reflected that plaintiff was ambulatory.  (Dkt. No. 81 at 3.)  Defendant Dumas therefore denied the grievance on February 1, 2012.  (Dkt. No. 9 at 12.)

REPORT AND RECOMMENDATION - 3

On February 13, 2012, plaintiff was seen by a nurse practitioner at KCCF. (Dkt. No. 81, Ex. 3.) Plaintiff, at that time, had recently returned from Harborview Medical Center where he was evaluated for right-side weakness after suffering a fall at KCCF. (*See id*. and Ex. 3.) The medical provider progress note of that visit indicated that plaintiff had been using a wheelchair since his return to the facility because he was reporting some continued weakness. (*Id*., Ex. 3 at 1.) The progress note also indicated, however, that a further interview with plaintiff revealed that his symptoms were "not that bad" and that he was able to function "well enough" with the use of a cane. (*Id*.) Plaintiff was given a cane at that time as well as naproxen for pain. (*See id*.)

On February 23, 2012, plaintiff submitted another grievance in which he complained that his back was burning and that he needed a wheelchair and proper medication. (Dkt. No. 9 at 14.) Defendant Dumas once again reviewed the available chart notes and saw that plaintiff had previously been issued a cane and pain medication. (Dkt. No. 81 at 3.) Defendant agreed with the treatment decision of the provider and responded to the grievance accordingly. (*Id*. at 3-4.)

On March 16, 2012, plaintiff submitted yet another grievance in which he complained that the pain in his neck and spine was getting worse and he asked to see a doctor. (Dkt. No. 9 at 9.) Defendant Dumas responded to that grievance on March 21, 2012. Defendant noted in his response that plaintiff had been seen in the clinic on March 13, 2012. (*Id*.) He also appeared to indicate that plaintiff already had a follow-up visit scheduled, and he instructed plaintiff to return to triage as needed to address his complaints. (*Id*.)

Plaintiff submitted his original complaint to the Court for filing on March 20, 2012. (Dkt. No. 1.) Plaintiff filed an amended complaint on April 10, 2012, after being advised that this Court would not order service of his original complaint because of various deficiencies in the pleading. (Dkt. Nos. 7 and 9.) Defendant Dumas now moves for summary judgment. (Dkt.

REPORT AND RECOMMENDATION - 4

No. 80.) Plaintiff has filed in response to defendant's summary judgment motion objections to the motion (Dkt. No. 83), a response to the qualified immunity defense asserted in defendant's motion (Dkt. No. 85), and two declarations in support of his opposition to defendant's motion (Dkt. Nos. 86 and 87). Defendant has filed a reply brief in support of his motion. (Dkt. No. 89.) Defendant's motion for summary judgment is now ripe for review.

## DISCUSSION

Plaintiff alleges that defendant Dumas, through his actions and his failure to act, has demonstrated deliberate indifference to plaintiff's serious medical needs in violation of his federally protected rights. Defendant argues that plaintiff's § 1983 claim must be dismissed because he was not deliberately indifferent to plaintiff's serious medical needs.

### Summary Judgment Standard

Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Id*. Material facts are those which might affect the outcome of the suit under governing law. *Id*.

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e). A mere scintilla of

REPORT AND RECOMMENDATION - 5

evidence is insufficient to create a factual dispute.  *See Anderson*, 477 U.S. at 252.  In ruling on a motion for summary judgment, the court is required to draw all inferences in a light most favorable to the nonmoving party.  *Id*. at 248.  The court may not weigh the evidence or make credibility determinations.  *Id*.

### Section 1983 Standard

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law.  *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of.  *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

### Due Process:  Inadequate Medical Care

Plaintiff was a pretrial detainee at KCCF at times relevant to his complaint and, thus, his claim of inadequate medical care arises under the Due Process Clause of the Fourteenth Amendment.  *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996).  The claim is nonetheless properly analyzed under Eighth Amendment standards.  *See id*.  In order to establish an Eighth Amendment violation, a prisoner must satisfy a two-part test containing both an objective and a subjective component.  The Eighth Amendment standard requires proof that (1) the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation; and (2) the prison official acted with a sufficiently culpable state of mind.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

REPORT AND RECOMMENDATION - 6

The objective component of an Eighth Amendment claim is "contextual and responsive to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The state of mind requirement under the subjective component of the Eighth Amendment standard has been defined as "deliberate indifference" to an inmate's health or safety. *Farmer*, 511 U.S. at 834. Under the "deliberate indifference" standard, a prison official cannot be found liable for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. *Id*. at 837. Differing opinions on medical treatment do not amount to a violation under the Eighth Amendment. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)).

The evidence submitted by defendant in support of his motion for summary judgment, which plaintiff does not rebut, establishes that defendant did not provide any direct medical care to plaintiff and that his involvement in plaintiff's care was limited to responding to medical grievances. Defendant responded to three grievances pertaining to the claims asserted by plaintiff in his complaint and on each occasion defendant essentially upheld the decision of the treatment provider.

Plaintiff's January 2012 grievance, in which he complained that he needed a wheelchair or cane, was rejected because the medical staff observed that plaintiff was ambulatory within the jail. (*See* Dkt. No. 9 at 12.) Plaintiff fails to establish that the denial of his request for a wheelchair constituted deliberate indifference to his serious medical needs. As defendant correctly points out, the parties, at most, have a difference of opinion as to plaintiff's care which does not rise to the level of a constitutional violation. *See Jackson*, 90 F.3d at 332.

REPORT AND RECOMMENDATION - 7

Plaintiff's February 2012 grievance, in which he complained of a burning pain in his back and requested a wheelchair and proper medications, was rejected because plaintiff's medical records indicated that he had recently been provided both a cane and pain medication to address his complaints. (*See* Dkt. No. 9 at 14.) And, in fact, the relevant medical progress note specifically indicated that while plaintiff had been using a wheelchair, the medical provider, after interviewing plaintiff, determined that plaintiff would be able to function well enough with the use of a cane. (Dkt. No. 81, Ex. 3 at 1.) Plaintiff fails to demonstrate that defendant's response to this second grievance constituted deliberate indifference to a serious medical need. That plaintiff did not like the response he received to his grievance does not, without more, establish a constitutional violation.[3]

Plaintiff's March 2012 grievance, in which he complained that the pain in his neck and spine was "really starting to bother me" and requested that he be seen by a doctor, was rejected because plaintiff had, in fact, been recently seen by the medical staff. (Dkt. No. 9 at 9.) Once again, plaintiff fails to offer any evidence demonstrating that defendant's response to his grievance constituted deliberate indifference. It appears clear from the grievance that plaintiff sought periodic care from the KCCF medical staff and that he was dissatisfied with their responses, but this demonstrates only that plaintiff and his providers disagreed with respect to treatment decisions, it does not demonstrate that defendant Dumas violated any of plaintiff's federally protected rights.

---

[3] Plaintiff has submitted in conjunction with his opposition papers a number of additional medical records. However, those records do not pertain to the relevant time frame nor do they demonstrate any additional involvement by defendant Dumas in plaintiff's medical care at times relevant to the complaint. (*See* Attachments to Dkt. Nos. 83-1, 86 and 87.)

REPORT AND RECOMMENDATION - 8

There is insufficient evidence in the record to establish any violation of plaintiff's federal constitutional right to adequate medical care. Accordingly, defendant is entitled to summary judgment with respect to plaintiff's claim that he violated plaintiff's federally protected right to adequate medical care for his serious medical needs.

### Pendant State Law Claims

To the extent plaintiff's amended complaint identifies claims which can reasonably be construed as asserting violations of state law, the Court declines to address such claims. The Supreme Court has stated that federal courts should refrain from exercising their pendent jurisdiction when the federal claims are dismissed before trial. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

### CONCLUSION

Based upon the foregoing, this Court recommends that defendant Dumas's motion for summary judgment be granted, and that all federal constitutional claims asserted against defendant Dumas be dismissed with prejudice and all state law claims be dismissed without prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 23rd day of April, 2013.

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9